1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10 | SECURITIES AND EXCHANGE COMMISSION,

CASE NO. 04-CV-01802-JM(BLM)

11 |                                Plaintiff,

**ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT**

12 |         vs.

13 | GLOBAL HEALTH; GLOBAL CLEARING; GLOBAL STRATEGIES; GOLDMAN

14 | QUINTERO & ASSOCIATES; VINCE DORY; and JOSHUA ADAMS,

15 |                                Defendants.

16

17      The Securities and Exchange Commission ("SEC") moves for entry of default

18  judgment against Global Health, Global Clearing, Global Strategies, and Goldman

19  Quintero & Associates (collectively "Defendants").  Defendants have not filed a

20  response to the motion.  The individual defendants, Vince Dory and Joshua Adams,

21  have similarly not responded to the motion.  Pursuant to Local Rule 7.1(d)(1), this

22  matter is appropriate for decision without oral argument.  For the reasons set forth

23  below, the motion for entry of default judgment is granted.  By separate order, the court

24  enters final judgment against Defendants.

BACKGROUND

26      On September 9, 2004 the SEC commenced this action alleging that Defendants

27  were violating various securities laws through a fraudulent investment scheme.

28  Defendants Global Clearing, Global Strategies, and Goldman Quintero & Associates

1  purported to act as brokers and individual defendants Vince Dory and Joshua Adams

2  held themselves out as account representatives of these entities.

3       The scheme involved cold-calling potential investors, primarily elderly investors,

4  and convincing them to buy shares in a non-existent, non-registered security: Global

5  Health.  As part of the scheme, Defendants allegedly falsified stock certificates and told

6  investors that the FDA had approved Global Health's new drug.  Defendants claimed

7  that Global Health had developed a successful new cancer treatment.  As part of the

8  scheme, Defendants provided forged documents, on FDA letterhead, indicating that

9  clinical trials of the cancer drug "demonstrate the effectiveness of this specific therapy,

10  with little or no side effects."  Upon receipt of checks from investors, the monies were

11  deposited in Mexican bank accounts.

12       On September 9, 2004 the SEC moved for a temporary restraining order ("TRO")

13  enjoining future securities law violations.  The court granted the TRO and imposed an

14  asset freeze.   The SEC attempted service but were unable to locate any of the

15  Defendants.  Pursuant to court order, Defendants were served at their place of business

16  and by publication in three newspapers of general circulation.  Defendants have not

17  responded  to the complaint nor have the individual defendants.

18       On September 19, 2006 the Clerk of Court entered default against each

19  Defendant. The SEC now moves for entry of default judgment against each Defendant.

20  A motion for entry of default judgment against individual defendants Vince Dory and

21  Joshua Adams is calendared for January 2007.

22  **DISCUSSION**

23       Federal Rule of Civil Procedure 55(b) provides, in pertinent part, that after entry

24  of default, "the party entitled to a judgment by default, shall apply to the court therefor."

25  Ordinarily, the default itself establishes defendant's liability. "Upon default, the well-

26  pleaded allegations of the complaint relating to liability are taken as true," but not

27  allegations as to the amount of damages. <u>Dundee Cement Co. v. Howard Pipe &</u>

28  <u>concrete Products</u>, 722 F.2d. 1319, 1323 (3rd Cir. 1983); <u>TeleVideo systems Inc. v.</u>

1   Heidenthal, 826 F.2d. 915, 917 (9th Cir. 1994).   The amount of damages may be

2   determined from the allegations of the complaint although those allegations are not

3   controlling.  Dundee, 722 F.2d. at 1323-24.  Where plaintiff is entitled to reasonable

4   attorney's fees by either contract or statute,  the court will determine the amount to be

5   awarded.  James v. Frame, 6 F.3d 307, 311 (3rd Cir. 1993).

6        The granting or denying of a default judgment is within the court's sound

7   discretion.  See Draper v. Combs, 792 F.2d 915 (9th Cir. 19986).  The following factors

8   are considered in determining whether to grant a default judgment: the substantive

9   merits of plaintiff's claim; the sufficiency of the complaint; the amount of money at

10   stake; the possibility of prejudice to plaintiff if relief is denied; and the possibility of

11   dispute as to any material facts in the case.  Moreover, where practicable, policy

12   considerations militate in favor of considering cases on their merits rather than

13   resolving matters through default judgment procedures.  Schwab v. Bullock's, Inc., 508

14   F.2d 353, 355 (9th Cir. 1974).

15        Here, the complaint's allegations establish that Defendants violated the Federal

16   Securities Laws by, among other things, violating the registration provisions of Sections

17   5(a) and 5(c) of the Securities Act, 15 U.S.C. §§77e(1) and 77e(c), by selling

18   unregistered securities.  Defendants sold Global Health, an unregistered security,

19   without complying with the registration requirements.  Defendants Global Clearing,

20   Global Strategies and Goldman Quintero & Associates also violated the broker

21   registration provisions of 15 U.S.C. §78o(a)(1) when they actively and fraudulent

22   engaged in the sale of investments without complying with the brokerage registration

23   requirements. Defendants also violated the anti-fraud provisions of Section 10(b) when

24   they knowingly made material misrepresentations in connection with the sale of Global

25   Health securities. Having established liability, the only other issue concerns appropriate

26   remedies.

27        Permanent Injunction.  Section 20(b) of the Securities Act, 15 U.S.C. §77t(b),

28   and section 21(d) of the Exchange Act, 15 U.S.C. §78u(d)1), provide that upon proper

1   showing, a permanent injunction shall be granted in enforcement actions brought by the

2   SEC. The SEC's burden is met upon a showing that establishes a reasonable likelihood

3   of a future violation of the securities laws. SEC v. Murphy, 626 F.2d 633, 655 (9th Cir.

4   1980). Looking to the totality of the circumstances, the court concludes that Defendants

5   have acted brazenly and egregiously by falsely claiming – by means of forged FDA

6   documents – that Global Health, a non-existent company, had obtained FDA approval

7   to sell a non-existing drug for curing cancer. Defendants' wrongful conduct occurred

8   over a prolonged period of time. Accordingly a permanent inunction is warranted to

9   protect the public and to prohibit Defendants from continuing with their fraudulent

10  schemes.

11          Disgorgement. The SEC also seeks the remedy of disgorgement. Disgorgement

12  is an equitable remedy designed to compel a defendant "to give up the amount by which

13  he was unjustly enriched" and to deter him and others from committing securities law

14  violations by making them unprofitable. SEC v. J.T. Wallenbrock, 440 F.3d 1109,

15  1113 (9th Cir. 2006). The court finds that disgorgement is an appropriate remedy and,

16  based upon the evidence submitted by the SEC, concludes that Defendants ill-gotten

17  gains total $247,250. The court also awards prejudgment interest through December

18  1, 2006 in the amount of $11,328.39, pursuant to 28 U.S.C. §1961, for a total amount

19  of $258,578.39.

20          Civil Penalties. Section 20(d) of the Securities Act and section 21(d)(3) of the

21  Exchange Act explicitly provide for the payment of civil monetary penalties in SEC

22  enforcement cases. 15 U.S.C. §77t(d) and 78u(d)(3). Civil penalties were enacted by

23  Congress "to achieve the dual goals of punishment of the individual and deterrence of

24  future violations." SEC v. Moran, 944 F.Supp. 286, 296 (S.D.N.Y. 1996). Penalties

25  are available in three separate tiers. The first tier provides for a penalty of up to

26  $60,000. The second tier provides for a penalty of up to $300,000 where the violation

27  involved "fraud, deceit, manipulation, or deliberate or reckless disregard or a regulatory

28  requirement." The Third tier provides for a penalty of up to $600,000 or the amount of

1  the defendant's gain if, in addition to the second tier elements, the violation directly or

2  indirectly resulted in substantial losses (or the risk of substantial losses) to other

3  persons.  The amount of civil penalty is determined from the totality of circumstances.

4  In light of the egregious, continuous, and substantial federal securities laws violations

5  of Defendants, the court requires Defendants to pay a civil penalty in the amount of

6  $100,000.

7          In sum, the court enters default judgment against Defendants.  By separate order,

8  the court enters final judgment against Defendants.

9          **IT IS SO ORDERED.**

10  DATED:  December 11, 2006

11

12                                                          Hon. Jeffrey T. Miller
                                                            United States District Judge

13  cc: All Parties

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28