# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>    vs.<br><br>GLOBAL HEALTH; GLOBAL CLEARING; GLOBAL STRATEGIES; GOLDMAN QUINTERO & ASSOCIATES; VINCE DORY; and JOSHUA ADAMS,<br><br>                              Defendants. | CASE NO. 04cv1802 JM(BLM)<br><br>ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS VINCE DORY AND JOSHUA ADAMS |

The Securities and Exchange Commission ("SEC") moves for entry of default judgment against defendants Vince Dory and Joshua Adams (collectively "Individual Defendants"). The Individual Defendants have not filed a response to the motion. On December 11, 2006, the court entered default judgment against all other defendants in this action. Pursuant to Local Rule 7.1(d)(1), this matter is appropriate for decision without oral argument. For the reasons set forth below, the motion for entry of default judgment is granted. By separate order, the court enters final judgment against Defendants. The Clerk of Court is instructed to close the file.

## BACKGROUND

On September 9, 2004 the SEC commenced this action alleging that Defendants were violating various securities laws through a fraudulent investment scheme.

1  Defendants Global Clearing, Global Strategies, and Goldman Quintero & Associates
2  purported to act as brokers and Individual Defendants Vince Dory and Joshua Adams
3  held themselves out as account representatives of these entities.

4  The scheme involved cold-calling potential investors, primarily elderly investors,
5  and convincing them to buy shares in a non-existent, non-registered security: Global
6  Health.  As part of the scheme, Defendants allegedly falsified stock certificates and told
7  investors that the FDA had approved Global Health's new drug.  Defendants claimed
8  that Global Health had developed a successful new cancer treatment.  As part of the
9  scheme, Defendants provided forged documents, on FDA letterhead, indicating that
10 clinical trials of the cancer drug "demonstrate the effectiveness of this specific therapy,
11 with little or no side effects."  Upon receipt of checks from investors, the monies were
12 deposited in Mexican bank accounts.

13 On September 9, 2004 the SEC moved for a temporary restraining order ("TRO")
14 enjoining future securities law violations.  The court granted the TRO and imposed an
15 asset freeze.  The SEC attempted service but were unable to locate an Defendant.
16 Pursuant to court order, Defendants were served at their place of business and by
17 publication in three newspapers of general circulation.  No Defendant has responded
18 to the complaint.

19 On November 7, 2006 the Clerk of Court entered default against Individual
20 Defendants Dory and Adams.  The SEC now moves for entry of default judgment
21 against these Individual Defendants.  The motion is unopposed.

## DISCUSSION

23 Federal Rule of Civil Procedure 55(b) provides, in pertinent part, that after entry
24 of default, "the party entitled to a judgment by default, shall apply to the court therefor."
25 Ordinarily, the default itself establishes defendant's liability.  "Upon default, the well-
26 pleaded allegations of the complaint relating to liability are taken as true," but not
27 allegations as to the amount of damages.  Dundee Cement Co. v. Howard Pipe &
28 concrete Products, 722 F.2d. 1319, 1323 (3rd Cir. 1983); TeleVideo systems Inc. v.

1  Heidenthal, 826 F.2d. 915, 917 (9th Cir. 1994).  The amount of damages may be
2  determined from the allegations of the complaint although those allegations are not
3  controlling.  Dundee, 722 F.2d. at 1323-24.  Where plaintiff is entitled to reasonable
4  attorney's fees by either contract or statute, the court will determine the amount to be
5  awarded.  James v. Frame, 6 F.3d 307, 311 (3rd Cir. 1993).

6       The granting or denying of a default judgment is within the court's sound
7  discretion.  See Draper v. Combs, 792 F.2d 915 (9th Cir. 19986).  The following factors
8  are considered in determining whether to grant a default judgment: the substantive
9  merits of plaintiff's claim; the sufficiency of the complaint; the amount of money at
10 stake; the possibility of prejudice to plaintiff if relief is denied; and the possibility of
11 dispute as to any material facts in the case.  Moreover, where practicable, policy
12 considerations militate in favor of considering cases on their merits rather than
13 resolving matters through default judgment procedures.  Schwab v. Bullock's, Inc., 508
14 F.2d 353, 355 (9th Cir. 1974).

15      Here, the complaint's allegations establish that Individual Defendants violated
16 the Federal Securities Laws by, among other things, violating the registration provisions
17 of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§77e(1) and 77e(c), by
18 selling unregistered securities.  Individual Defendants sold Global Health, an
19 unregistered security, without complying with the registration requirements. Individual
20 Defendants also violated the broker registration provisions of 15 U.S.C. §78o(a)(1)
21 when they actively and fraudulent engaged in the sale of investments without
22 complying with the brokerage registration requirements.  Individual Defendants also
23 violated the anti-fraud provisions of Section 10(b) when they knowingly made material
24 misrepresentations in connection with the sale of Global Health securities. Having
25 established liability, the only other issue concerns appropriate remedies.

26      Permanent Injunction.  Section 20(b) of the Securities Act, 15 U.S.C. §77t(b),
27 and section 21(d) of the Exchange Act, 15 U.S.C. §78u(d)1), provide that upon proper
28 showing, a permanent injunction shall be granted in enforcement actions brought by the

SEC. The SEC's burden is met upon a showing that establishes a reasonable likelihood of a future violation of the securities laws. <u>SEC v. Murphy</u>, 626 F.2d 633, 655 (9th Cir. 1980). Looking to the totality of the circumstances, the court concludes that the Individual Defendants have acted brazenly and egregiously by falsely claiming – by means of forged FDA documents – that Global Health, a non-existent company, had obtained FDA approval to sell a non-existing drug for curing cancer. Individual Defendants' wrongful conduct occurred over a prolonged period of time. Accordingly a permanent inunction is warranted to protect the public and to prohibit the Individual Defendants from continuing with their fraudulent schemes.

<u>Disgorgement</u>. The SEC also seeks the remedy of disgorgement. Disgorgement is an equitable remedy designed to compel a defendant "to give up the amount by which he was unjustly enriched" and to deter him and others from committing securities law violations by making them unprofitable. <u>SEC v. J.T. Wallenbrock</u>, 440 F.3d 1109, 1113 (9th Cir. 2006). The court finds that disgorgement is an appropriate remedy and, based upon the evidence submitted by the SEC, concludes that Individual Defendants ill-gotten gains total $247,250. The court also awards prejudgment interest through January 12, 2007 in the amount of $11,929.63, pursuant to 28 U.S.C. §1961, for a total amount of $259,179.63.

<u>Civil Penalties</u>. Section 20(d) of the Securities Act and section 21(d)(3) of the Exchange Act explicitly provide for the payment of civil monetary penalties in SEC enforcement cases. 15 U.S.C. §77t(d) and 78u(d)(3). Civil penalties were enacted by Congress "to achieve the dual goals of punishment of the individual and deterrence of future violations." <u>SEC v. Moran</u>, 944 F.Supp. 286, 296 (S.D.N.Y. 1996). Penalties are available in three separate tiers. The first tier provides for a penalty of up to $60,000. The second tier provides for a penalty of up to $300,000 where the violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard or a regulatory requirement." The Third tier provides for a penalty of up to $600,000 or the amount of the defendant's gain if, in addition to the second tier elements, the violation directly or

1  indirectly resulted in substantial losses (or the risk of substantial losses) to other
2  persons. The amount of civil penalty is determined from the totality of circumstances.
3  In light of the egregious, continuous, and substantial federal securities laws violations
4  of the Individual Defendants, the court requires them to pay a civil penalty in the
5  amount of $120,000.

6  In sum, the court enters default judgment against the Individual Defendants. By
7  separate order, the court enters final judgment against Defendant Dory and Adams. The
8  Clerk of Court is instructed to close the file.

9  **IT IS SO ORDERED.**
10 DATED: February 6, 2007

11 _____
12 Hon. Jeffrey T. Miller
   United States District Judge

13 cc: All Parties